[No. 22951.   Department Two.   June 24, 1931.]

G. P. JAMES, *Appellant*, v. CITY OF SEATTLE, *Respondent.*[1]

*Shorts & Denney* and *Clinton H. Hartson,* for appellant.

*A. C. Van Soelen* and *J. Ambler Newton,* for respondent.

BEELER, J.—The appellant, a contractor, brought this action against the respondent, the city of Seattle, to recover the unpaid part of the final estimate under a

[1]Reported in 300 Pac. 515.

contract for the construction of a street railway trestle. For a thorough understanding of the controversy, a rather detailed statement of the pertinent facts is necessary. There is no dispute about the facts, except as will be indicated.

The respondent, the city of Seattle, owns and operates a street car system, acquired under Rem. Comp. Stat., §§ 9488, et seq. No general indebtedness was incurred in its acquisition and apparently none has since been incurred in the making of additions, betterments and extensions. See *Twitchell v. Seattle,* 106 Wash. 32, 179 Pac. 127; *Asia v. Seattle,* 119 Wash. 674, 206 Pac. 366; *Hayes v. Seattle,* 120 Wash. 372, 207 Pac. 607.

By ordinance No. 57,355, approved April 22, 1929, the city council adopted a plan for certain additions and betterments to the street railway system and provided for paying the cost thereof out of future earnings of the system, and created a special fund into which certain sums derived from future earnings should be placed and out of which, and only out of which, warrants issued for the cost of the additions and betterments should be paid.

By ordinance No. 57,899, approved July 11, 1929, the Board of Public Works was directed to proceed with the construction of the additions and betterments proposed by the previous ordinance, and to do so by the letting of contracts. In this ordinance, the following occurs:

"Section 2. That the said Board of Public Works be, and it is hereby, authorized and directed to provide in any such contract for the delivery to the contractor, at not less than par and accrued interest, in payment for work performed thereunder, warrants, the issuance of which is authorized by said Ordinance No. 57,-355, and to grant to the contractor, in lieu of taking such delivery, a continuing option to purchase, at not less than par and accrued interest, a sufficient amount

of such warrants to complete said contract, subject, to the prior right of the city itself to sell such warrants and to make payments under such contract in cash, and in the event the contractor shall exercise such option, the proceeds derived by the City therefrom shall be placed in the Railway Extension Warrant 1929 Construction Fund (the special fund established by Ordinance No. 57,355) and held in trust to the extent, and for the payment, of the amounts becoming due under such contract. . . ."

One part of the construction work so authorized is the subject of this action; viz., a trestle on west Spokane street. Bids were invited in the usual manner. The advertisement described the work as,

"The construction of a street railway trestle on west Spokane street from First avenue south to east Marginal way as authorized by Ordinance No. 57,899, in accordance with the plans and specifications on file in the office of the secretary of the Board of Public Works and the Superintendent of Public Utilities, respectively."

The specifications referred to in the advertisement stated that,

"The work to be done under these specifications covers the construction of an elevated trestle on west Spokane street, connecting to the present elevated structure at east Marginal way and extending to First avenue south."

Then follows a reference to certain drawings, which are declared to be a part of the specifications. The drawings do not show rails, overhead spans or trolley wires. Details of the work are then described with considerable minuteness. In the course of the description, it is stated that,

"Street car service will be discontinued on a Saturday night at 8:00 p. m., the rails and ties stripped off (of certain girders in the old trestle that were to be

used in the new) by the Municipal Street Railway, and the contractor will then remove the girders,'' etc.

Further along, occurs this paragraph:

''RAILS AND OVERHEAD: Seattle Municipal Railway shall furnish and lay all rails with the necessary plates, bonding, etc. Contractor will furnish and erect poles and Seattle Municipal Street Railway will furnish and install overhead spans, trolley wires, etc.''

The final paragraph of the specifications reads as follows:

''CONTRACT: This is a lump sum contract and shall include furnishing labor and material necessary to build trestle as per plans and specifications; do all clearing and grading within the outermost limits of trestle and burn refuse; do all excavating for concrete footings and bulkheads, or otherwise necessary excavation to complete trestle and backfill so as to leave ground with a smooth surface. *Contractor shall pay Seattle Municipal Street Railway a lump sum of $8,-508.00 in cash for the work that they perform.*'' (Italics ours.)

Appellant submitted a bid for the work, proposing ''to furnish all material and perform all labor which may be required to complete said work'' according to the plans and specifications ''at the following prices, to-wit: Street Railway Trestle, Fifty-one Thousand Nine Hundred and Forty-one Dollars ($51,-941.00) lump sum.'' (Here follow unit prices for extra work not called for on the plans.)

Before submitting the bid, however, and before completing his calculations upon which ultimately the lump sum was based, the appellant, having some doubt as to whether the contractor who did the work would receive special fund warrants to the amount of the $8,-508.00 in cash, required by the above-quoted specification to be paid to the Seattle Municipal Street Rail-

way, inquired of the respondent's superintendent of public utilities whether warrants would be so received. This inquiry was made pursuant to a caution given in printed "Instructions to Bidders" accompanying the specifications, to the effect that if there should be any doubt or obscurity as to the meaning of the plans, specifications, proposal or form of contract, intending bidders should ask the superintendent of public utilities for an explanation before submitting proposals. The superintendent answered in the affirmative, i. e., that the contractor would receive warrants for the $8,-508. Thereupon the appellant completed his calculations by adding in the anticipated discount at which he would have to dispose of the warrants, and submitted the bid.

The appellant's bid was accepted and he entered into a contract August 23, 1929, in exact conformity with the proposal, a copy of which is set out in the contract. The contract, in addition to making the plans and specifications a part of it, referred to the city's "Standard Plans and Specifications," printed in a book of over 200 pages, and made them a part of the contract as far as applicable. One section under the title "General Stipulations Applicable to All Contracts" reads as follows:

"34. BILLS OF CITY DEPARTMENTS—How PAID. The contractor shall pay in cash all bills rendered against the local improvement district by any city department, when properly approved by the city engineer, and shall accept warrants or bonds equal to the amount of such bills. These bills shall be paid without any additional percentage being allowed. As far as practicable the amount of such bills will be estimated and shown on the proposal blank for the improvement. Bills due the city or any department thereof shall be a first lien upon and shall be deducted from any money due or to become due the contractor."

It will be proper to observe here that, by the explicit terms of the contract thus made, the materials to be furnished and the work to be done by the appellant were clearly defined and were such as would result in what is called the ''trestle,'' and that rails, trolley and trolley spans were for the city to supply and install and were something apart from what the appellant was to construct.

The appellant performed his contract and completed the work, which was accepted by the city. The acceptance was evidenced by the following record in the minutes of the proceedings of the board of public works at a meeting held November 8, 1929:

''Letters from the City Engineer reported completion of the following contracts for local improvements, and the same were accepted subject to departmental bills, re-inspection, etc., as recommended by the Streets and Sewers Department. . . .

''Street Railway trestle at west Spokane street from 1st avenue to east Marginal way. Ord. 57,899, under contract with G. P. James.''

During construction there was a monthly estimate made upon which $23,000 was paid to the appellant in warrants. After the completion of the work, a final estimate was made which included the lump sum bid of $51,941 and enough more for extra concrete, timber, steel, and labor to bring the total to $54,402.84; so that, deducting the $23,000 theretofore paid, there remained payable to the appellant, in special fund warrants, $31,402.84 for the construction of the trestle.

At about the time the final estimate was made, the appellant received from the city on behalf of the Municipal Street Railway a bill for ''labor and material (Atlantic street girders not included) covering the placing of rails and overhead on the Spokane street trestle and removal of track at Atlantic street, on E.

Marginal way, per contract of Aug. 23, 1929; $8,-508.00.'' The city insisted, as a condition to delivering the appellant warrants to the amount of the unpaid part of the final estimate, $31,402.84, that the appellant pay in cash the bill of $8,508 without receiving the amount thereof in warrants. The appellant offered to pay the $8,508 for that amount of warrants, and the offer was refused.

This action was brought by the appellant to recover the $31,402.84. There was a trial by the court without a jury, which resulted in findings and conclusions in favor of the city and a judgment that, upon the appellant's paying to the city $8,508 (without receiving warrants therefor), the city deliver to him warrants in the amount of $31,402.84. From that judgment, this appeal was taken.

It will have been seen that, from the face of the contract itself (including all of the documents that were made a part of it), it is not as clear as it might be that the appellant was entitled to receive warrants for the $8,508. But when the city's predicament with respect to the making of additions and betterments to the street railway system is considered,—that no funds were available for the purpose and no general indebtedness could be incurred and that rails could be laid and trolleys erected advantageously only by the railway and that the cost of new work done by the railway could not lawfully be paid as cost of maintenance and operation, but had to be segregated,—it is a fairly reasonable inference from the whole contract, read in connection with the ordinances, that the cash payment required of the contract was for the purchase of warrants; or, in other words, that the cash payment feature of the contract was merely a plan to enable the city to sell conveniently and as a part of the whole transaction, enough warrants to obtain cash

wherewith to pay for what it undertook to do itself toward completing the proposed addition or betterment.

It is hardly reasonable to suppose that the city, when it called for bids, was inviting contractors to offer to furnish materials and perform work for $8,508 more than they were reasonably worth.

Our conception of the intent of the contract is supported by paragraph 34 of the Standard Plans and Specifications above quoted. It is true that that paragraph, when considered alone and read literally, seems to apply only to the city's bills against local improvement districts wherein improvements are made at the expense of benefited private property; but the paragraph occurs under the head of "General Stipulations Applicable to All Contracts," and, the whole body of the plans and specifications in which it occurs having been made a part of the appellant's contract by reference, it might reasonably be considered, *mutatis mutandis*, applicable to improvements generally. And in this connection it is significant that, in the minute recording the acceptance of the work done by the appellant, his contract is listed among "contracts for local improvements," which indicates that a nice precision in the use of terms does not uniformly characterize the language employed by the city's officials with respect to its contracts and the work done under them.

But there was, of course, room for doubt, and the appellant, before submitting his proposal, had a doubt. He then did just what the city's "Instructions to Bidders" cautioned him to do: He inquired of the superintendent of public utilities whether he would receive warrants for the cash he would have to pay. The superintendent told him that he would. The trial judge had no doubt that this occurred, though he did feel that the interview at which the information was given

was extremely brief for the consideration of so important an inquiry, and that, inasmuch as the superintendent's memory at the trial was not quite clear as to just what inquiry had been made by the appellant, he (the judge) could not find that there had been such a "meeting of minds" as would result in a contract. That, however, is not the question. The question is, Did the appellant inquire of the superintendent whether the proposed contract meant so and so, and receive an affirmative answer? We are satisfied he did and so was the trial judge, as we have said.

The appellant having relied and acted upon an interpretation put upon the contract by the city before the contract was entered into, and that interpretation being not only a possible but a reasonable one, the appellant is entitled to have it adhered to by the city.

The judgment is reversed and remanded, with a direction to give the appellant judgment for $31,402.84, with interest, payable in warrants, upon his paying the city $8,508 in cash for a like amount of the same kind of warrants.

TOLMAN, C. J., MILLARD, and MAIN, JJ., concur.